## In re OTTO.

### (District Court, D. New Jersey. May 22, 1902.)

BANKRUPTCY—DISCHARGE—CONCEALMENT OF ASSETS.

> Where a bankrupt omitted from his schedules money standing to his credit in bank, and on his examination at first denied that he had a bank account, and subsequently testified that it had been closed, and then claimed that the money belonged to his wife under a written trust agreement, which he failed to produce when requested, a finding was justified that he knowingly and fraudulently concealed the money from his trustee, and was debarred from the right to a discharge.[1]

In Bankruptcy. On application for discharge.

Paul N. Turner and John S. Foster, for bankrupt.

Hatch & Wickes, for intervening creditor.

KIRKPATRICK, District Judge. Application has been made in this case for the discharge of the bankrupt. The matter going to the referee, testimony has been taken, and the referee finds from it that the bankrupt has knowingly and fraudulently concealed, while a bankrupt, from his trustee, and failed to mention in the schedule attached to his petition in bankruptcy, certain moneys deposited and standing to his credit on the books of the Market and Fulton National Bank in the city of New York. I have carefully considered the testimony, and concur in the conclusion reached by the referee. I am satisfied from the evidence that the account in the Market and Fulton Bank was one in which was kept the general funds of the Otto family, which funds were used for the purpose of maintaining it; that the bankrupt deposited in the account the proceeds of his own labor as well as any income of which his wife was the recipient, and so mingled them as to render them indistinguishable. The account stood in the name of the bankrupt, and no other person was entitled to draw upon it. It was under his sole control, and he was the owner of it. There was a balance to the credit of the bankrupt in the account at the time of the adjudication, and this amount should have been included in the schedules. I am of the opinion that the omission of the amount from the schedules was made knowingly and fraudulently. In his examination the bankrupt denied that he had any bank account, either for himself or as attorney or trustee for his wife. When he did admit the existence of the account in question, he sought to belittle it, swore that it had been closed, that it belonged to his wife under a trust agreement, showing what purported to be a copy thereof. This paper was without date or witnesses. He was asked to produce the original, but after ample opportunity neglected or refused so to do. It does not appear that this agreement was shown to any one, and the advice of Mr. Turner that because of it the money in the Market and Fulton Bank belonged to his wife was conditioned upon the fact that the agreement had been made bona fide. The evidence fails to satisfy me that such an agreement was ever made, and it was incumbent on the bankrupt to show that the money standing in his name

1 See Bankruptcy, vol. 6, Cent. Dig. § 735.

at the time of filing the schedules, and not included therein, was the property of another, and not his own.

In the whole case I concur in the finding of the referee, and the discharge of the bankrupt is therefore refused.

JABINE et al. v. OATES et al.

(Circuit Court, W. D. Kentucky. May 24, 1902.)

APPEAL BOND—VALIDITY—APPEAL TAKEN IN ACTION AT LAW.

An appeal will not lie from a judgment of a federal court awarding a writ of mandamus, which is at law; and where such an appeal was prayed for, and inadvertently allowed, a bond given thereon was a nullity, and did not operate as a supersedeas, nor was it based upon any consideration which could bind the parties thereto, either as a statutory or a common-law obligation.[1]

At Law. On demurrer to answer.

D. M. Rodman, for plaintiffs.
Wm. H. Yost and Willis L. Reeves, for defendants.

EVANS, District Judge. Several years ago the two plaintiffs each brought an action at law against the county of Muhlenberg to recover the amounts due on certain interest coupons attached to bonds issued by that county. Judgments having been rendered for the amounts claimed, the plaintiffs, in ancillary proceedings which were consolidated, procured the issuance of a writ of mandamus requiring the county court of Muhlenberg county to levy a tax sufficient to pay the sums due. In the course of this consolidated proceeding the judgment was rendered which is described in the bond presently to follow. From this last judgment an appeal was prayed and granted to the circuit court of appeals, and Muhlenberg county executed an appeal bond in the following words:

"Whereas, the appellants, Muhlenberg county and the Muhlenberg county court, have taken an appeal from a judgment of the United States circuit court for the Sixth circuit, and district of Kentucky, Owensboro division, rendered at its January term, 1897, against them, in which judgment the county judge of said county was ordered and directed to forfeit the office of and remove the present sheriff of Muhlenberg county from his office, and further, after such removal, to appoint a collector to collect the tax heretofore levied in the above cases by the county court, and to appoint as such collector any citizen or resident of the state of Kentucky, whether he is a resident of the appellant county or not; whereas, the above-named appellants have prosecuted an appeal to the United States circuit court of appeals for the Sixth circuit to reverse the judgment above described: Now, we, Muhlenberg county as principal, and P. S. Phillips [and others, naming them] as sureties, covenant to and with the appellees, John N. Jabine and Eva Murray, in the above-named consolidated cases, that the appellants will pay to the appellees all costs and damages that may be adjudged against the appellants on the appeal, and that they will satisfy and perform the judgment in case it shall be affirmed, by removing the said sheriff, and by appointing the collector as required in said judgment: Now, therefore, the consideration of this obligation is such that if the above-named appellants shall prosecute their said appeal to effect, and answer all damages and costs if they shall

_____

[1] See Mandamus, vol. 33, Cent. Dig. § 428.